**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CASEY SZAFLARSKI,** | ) | |
| | ) | |
| Petitioner, | ) | No. 13 C 1166 (08 CR 115-8) |
| | ) | |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner moves the Court pursuant to 28 U.S.C. § 2255 to vacate his convictions for operating an illegal gambling business, filing false tax returns and failing to file tax returns. For the reasons set forth below, the Court denies the motion.

## Discussion

Petitioner first argues that he is entitled to § 2255 relief because he was deprived of his constitutional right to effective assistance of counsel. Specifically, he faults his trial counsel for: (1) obtaining a waiver of appellate rights from him when he was not competent to make one and while laboring under a conflict of interest; (2) failing to investigate whether government witnesses actually used receipts petitioner had given them to prepare their tax filings; (3) failing to object to Enrique Rendon's hearsay testimony about a conversation with Jasper Marino; and (4) failing to call Jasper Marino to testify. To prevail on these claims, petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 688-93 (1984). The *Strickland* standard is "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986), and requires petitioner to overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

To satisfy the performance element for the first claim, petitioner must show that his lawyer knew or should have known that he was incompetent when he waived his appellate rights. *See U.S. ex rel. Rivera v. Franzen*, 794 F.2d 314, 317 (7th Cir. 1986) ("While one would hope that defense lawyers would routinely reflect upon the mental capabilities of a defendant, in the absence of circumstances that would put a counsel on notice the Constitution cannot be read to mandate a specific inquiry at all times."). Defense counsel clearly knew that her client was taking prescription pain medication at the time of sentencing. (*See* Sentencing Mem. & Exs.) However, she also knew that he had been taking such medication daily, at his physicians' direction, since July 2009, eight months before he was indicted. (*See id.*; 2d Superseding Indictment.) Despite his chronic use of pain medication, at no time from his March 2010 arrest to his April 2012 surrender did petitioner claim, or appear to the Court, to be impaired by it. Because there is no evidence that his medication regime, at the time of the waiver, was qualitatively different from the one that he followed without impairment during the rest of the proceedings, he has not shown that his lawyer unreasonably accepted the waiver.

Alternatively, petitioner argues that he and his lawyer had conflicting interests with respect to the waiver – hers not to spend more money, his to seek reversal on appeal – because he owed her $15,000.00 of the $150,000.00 flat fee to which they had agreed and had no means of paying her.

2

To prevail on this ineffective assistance claim, petitioner must show that his attorney: (1) had a potential conflict that prejudiced his defense or (2) an actual conflict, *i.e.*, "was required to make a choice advancing [her] own interests to the detriment of [petitioner's] interests," and but for the conflict, "there is a reasonable likelihood that counsel's performance somehow would have been different." *Stoia v. United States*, 109 F.3d 392, 395 (7th Cir. 1997) (quotations and citations omitted). Petitioner does not, however, attest that his lawyer failed to tell him he could appeal, falsely told him he could not appeal or even urged him not to appeal. Rather, he contends that she should not have accepted, "[N]o, because we [cannot] afford it," as his answer to the question, "Do you want to appeal?" (*See* Reply, Pet'r's Aff. ¶¶ 6-7; *id.*, Email from Carol Szaflarski to Pet'r (Mar. 7, 2013).)

It is not clear whether the existence of a debt to defense counsel creates an actual conflict of interest. *Compare Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995) (stating that "[a] conflict may . . . arise when a client's interests are adverse to his lawyer's pecuniary interests"), *with United States v. Ohiri*, 287 Fed. Appx. 32, 38 (10th Cir. 2008) (rejecting "[the] assertion that the mere existence of [defendant's] debt [to his attorney] gave rise to an actual conflict"), *Caderno v. United States*, 256 F.3d 1213, 1219 (11th Cir. 2001) (per curiam) ("Although a defendant's failure to pay fees may cause some divisiveness between attorney and client, courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client.") (quotations omitted), *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997) ("We never have held that failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, gives rise to a conflict of interest . . . ."). However, assuming

3

that it does, the conflict would merit § 2255 relief only if it adversely affected his lawyer's performance. Petitioner contends that it did because, absent the conflict, counsel would have filed an appeal on his behalf or asked the Court to appoint another lawyer to do so. (Reply, Pet'r's Aff. ¶ 8.)

The Court disagrees. A lawyer is required "[to] abide by [her] client's decisions concerning the objectives of representation," including whether to file an appeal. ABA Model R. Prof'l Conduct 1.2(a) (2011). Thus, unless defendant was patently incompetent, and there is no evidence that he was, no reasonable lawyer would have filed an appeal against his wishes. The Court also rejects the notion that, absent her financial interest, counsel would have "informed the court of [petitioner's] inability to pay for an appeal, thereby allowing the court to appoint an attorney to process an appeal." (Reply, Pet'r's Aff. ¶ 8.) At the sentencing hearing, the Court explicitly told defendant that it would prepare a notice of appeal for him if he wished and the appellate filing fee would be waived if he were unable to pay it. Given these representations, there was no reason for counsel to ask the Court to appoint a lawyer to file an appeal. In short, petitioner's first ineffective assistance claim fails.

Petitioner fares no better with his second claim, that his lawyer should have verified that the government's witnesses actually gave receipts from petitioner to their accountants to prepare their tax returns. First, this effort would have been beneficial only if the accountants denied being given the receipts, a proposition for which petitioner offers no support. Second, even if the accountants offered such denials, their testimony would have served only to impeach the credibility of the government's witnesses. Given how thoroughly defense counsel impeached these witnesses,

4

establishing that they repeatedly lied to the IRS, the FBI and government prosecutors in interviews, statements, tax returns and grand jury testimony, the value of further impeaching evidence would have been marginal, at best. Defense counsel was not, therefore, ineffective for failing to elicit testimony from the accountants.

Petitioner's next claims are that his lawyer should have objected to Enrique Rendon's testimony about his conversation with Jasper Marino and should have called Marino to testify. Rendon testified that he told Marino he wanted some bingo machines for his bar, to which Marino replied, "[L]et me call the big guy," which Rendon understood to be a reference to Mike Sarno. (Trial Tr. at 721-23.) The next day, Rendon testified, petitioner called him to discuss the machines, and the day after that petitioner delivered three bingo machines to Rendon's bar. (*Id.* at 723-25.) Petitioner contends that Marino would have testified that he "had in fact called petitioner . . . to secure amusement machines for Rendon, an [sic] not by inference did Mike Sarno, call petitioner." (§ 2255 Mot. at 7.)

Petitioner does not, however, have any evidence to support his assumption about the content of Marino's testimony. (*See id.* (stating that petitioner did "not submit[] an affidavit from Jasper Marino as he has been unable to locate [Marino]").) Moreover, even if his assumption were correct, neither the admission of Marino's testimony nor the suppression of Rendon's would have vitiated the wealth of testimony from other bar and restaurant owners that petitioner knew about, and profited from, their use of his machines for illegal gambling. (*See, .e.g.*, Tr. at 126-61, 194-229, 252-70, 293-304, 320-336, 352-373, 388-96, 400-06, 414-37, 578-605, 619-34.) Thus, defense counsel was not ineffective for failing to call Marino to testify or object to Rendon's testimony.

Lastly, petitioner contends that he has been punished twice for the same crimes because he was sentenced to both a term of imprisonment and a fine of $160,000.00. *See Smith v. United States*, 76 F.3d 879, 881 (7th Cir. 1996) ("The Double Jeopardy Clause prohibits more than one 'punishment' for the same offense.") Because petitioner did not raise this claim on appeal, he can raise it in this motion only if he shows: (1) good cause for and prejudice from failing to raise it on appeal; or (2) that the Court's refusal to consider it would "lead to a fundamental miscarriage of justice." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). The Court has already rejected the purported cause of petitioner's failure to assert this claim on appeal, *i.e.*, his lawyer's poor performance. Moreover, he cannot show prejudice or a possible miscarriage of justice because the "fine" he contests is actually an order of restitution (*see* 2/29/12 J.), which is not "punishment" for purposes of double jeopardy. *United States v. Newman*, 144 F.3d 531, 538-39 (7th Cir. 1998). Accordingly, petitioner's double jeopardy claim also fails.

## **Conclusion**

For the reasons set forth above, the Court denies petitioner's § 2255 motion and terminates this case. Moreover, because petitioner has not made a substantial showing of the denial of a constitutional right, the Court also declines to issue a certificate of appealability.

**SO ORDERED.**                                                   **ENTERED: September 13, 2013**

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**

6